IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. 08-20345 MaV |
| | ) |
| | ) |
| SCOTTY TWITTY, | ) |
| | ) |
|     Defendant. | ) |

_____

REPORT AND RECOMMENDATION

_____

The defendant, Scotty Twitty, was indicted on four counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922 (g). Count One charges Twitty with possessing an E.R. Amantino twelve gauge shotgun, Count Two charges him with possessing a Mossburg .20 gauge shotgun, Count Three charges him with possessing a Colt .45 caliber semi-automatic pistol, and Count Four charges him with possessing a CGA 7.62 x 39 mm caliber rifle. Before the court is the January 22, 2009 motion of Twitty to suppress all evidence seized as a result of a warrantless search of his place of business, Twitty City Auto Sales, including, but not limited to, the E.R. Amantino twelve gauge shotgun and the Mossburg .20 gauge shotgun, which are the subjects of Counts One and Two of the indictment. United States District Court Judge Samuel H. Mays referred this motion to the United States Magistrate Judge for determination. Because 28 U.S.C. § 636(b)(1)(A) imposes a

limitation on the matters this court can determine, the court hereby submits this report and recommendation.

An evidentiary hearing was held on March 17, 2009. During the hearing, the government called one witness, Deputy Heath Walker of the Dyersburg Sheriff's Department. The defendant did not call any witnesses. For the following reasons, the court recommends that the defendant's motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

Deputy Walker was the only witness to testify. The court finds his testimony credible in all respects and adopts as fact his version of the events.

In the early morning hours of December 15, 2005, the Sheriff's Department of Dyersburg was investigating a home invasion involving the theft of a handgun and a large amount of money which had occurred at approximately 12:46 a.m. The victim identified a green Lumina as a vehicle that may have been involved in the burglary. Twitty, the owner of a green Lumina, was determined to be a suspect. In furtherance of the investigation, Deputy Walker proceeded to Twitty's place of business, Twitty City Auto Sales, at 1196 Highway 51, Dyersburg, Tennessee. Deputy Walker drove onto the parking lot of Twitty City and observed a green Lumina vehicle in the parking lot. The lights in the office of Twitty City were out, and Twitty City was closed for business at that time. Deputy Walker exited the Twitty City parking lot, called in his

observations from the street, and pulled back into the Twitty City parking lot.

Upon entering the Twitty City parking lot the second time, Deputy Walker exited his vehicle to check out the green Lumina. Deputy Walker then observed Twitty, who had exited the Twitty City building, in the Twitty City parking lot. Deputy Walker approached Twitty and asked him if anyone else was present at Twitty City. Twitty stated that there was another individual inside the office building. Deputy Walker then asked to enter the Twitty City building, stating that he needed to speak to both of them. In response to this request, Twitty turned and entered the building, and Deputy Walker followed.

Upon entering the Twitty City building, Deputy Walker observed an office area with a desk, chairs around the edge of the office area, a firearm, and a second individual, Earl Ethridge. Ethridge is now deceased. Deputy Walker asked Twitty if he could move the firearm outside of the room, as he was concerned for his safety, and also asked if there were any other firearms present. Twitty agreed that Deputy Walker could move the firearm and advised Deputy Walker that there was another firearm in the second office of Twitty City. Twitty stated that both firearms were owned by his wife and that he was a convicted felon. With Twitty's permission, Deputy Walker placed the firearm he had observed behind Twitty's chair ("the first firearm") in the second office. When he did so,

he observed a second firearm in that office ("the second firearm").

When Deputy Walker returned to the first office, Twitty asked Deputy Walker what was going on. Deputy Walker told him that he was investigating a burglary and that Sergeant Cannon of the Dyersburg Police Department was on his way to Twitty City. At that time, Deputy Walker performed a pat down search of Twitty and Ethridge. During the pat down of Twitty, Deputy Walker felt a bulge in Twitty's pocket which Deputy Walker believed to be drugs. Deputy Walker told Twitty what he felt, but did not remove the bulge from Twitty's pocket because he did not feel that it was a threat to him. Deputy Walker did, however, repeatedly ask Twitty to take the item causing that bulge out of his pocket. Although Twitty initially resisted Deputy Walker's requests, he eventually removed the item which turned out to be a bag containing cocaine.

Soon thereafter, Sergeant Cannon, who is now deceased, arrived at Twitty City. At approximately 2:00 or 3:00 a.m., Sergeant Cannon presented a form entitled "Waiver of Constitutional Rights to a Search Warrant" ("Waiver") to Twitty, reviewed it with Twitty, and Twitty signed it. The Waiver states:

> I, Scot Twitty, having been informed of my constitutional right not to have a search and seizure made of the premises hereinafter mentioned or my person without a search warrant, and of my right to refuse to consent to such a search, hereby waives this right and authorize Sgt[.] John Cannon Jr[.] and Deputy Heath Walker, law enforcement officer(s) of the Dyer County Sheriff's Department to (A) Take from my premises any letters, papers, materials or other property which they may desire . . . . [and] B. Seize evidence from the body of my

4

> person . . . . This written permission is being given by me to the above-named persons voluntarily and without threats or promises of any kind. I understand that any evidence found as a result of my consent to this search and seizure without a search warrant can and may be used as evidence against me in a Court of Law.

Ex. 1. Deputy Walker testified that Twitty was detained at the time he signed the Waiver.

Deputy Walker and Sergeant Cannon then searched both offices and the workshop in the Twitty City building. They found a small amount of cocaine on a plate in the second office, the two firearms in the second office, a gun cleaning kit, and several rounds of ammunition in the second office's desk. Both the first and second firearms remained at Twitty City until investigators from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrived and seized them.

## II. PROPOSED CONCLUSIONS OF LAW

Twitty contends that the warrantless search of Twitty City after he was in police custody violated the Fourth Amendment because no exigent circumstances existed for the search and that the consent he signed was invalid because it was too close in time to the illegal entry and search of Twitty City by the police to be a product of Twitty's free will.

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

5

place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment prohibits warrantless searches and seizures, and any search conducted without a warrant is considered "per se unreasonable." U.S. CONST. amend. IV; *United States v. Roarke*, 36 F.3d 14, 17 (6th Cir. 1994)(quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). This prohibition applies to commercial premises as well as private residential homes. *New York v. Burger*, 482 U.S. 691, 699 (1987) (citing *See v. City of Seattle*, 387 U.S. 541, 543 (1967)). The Fourth Amendment's requirement of probable cause and a warrant is, however, subject "to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

A.  Validity of Consent to Search

One exception to the Fourth Amendment's requirement of probable cause and a warrant is a consensual search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted); *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996) (holding that "[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search"). The government bears the burden of establishing that consent was "freely and voluntarily given." *Schneckloth*, 412 U.S. at 222 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). "Consent to a search 'may be in the form of words, gesture, gesture, or conduct.'" *United States v. Carter*, 378 F.3d 584, 587

6

(6th Cir. 2004) (quoting *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976)).

The Supreme Court has established a list of factors which a court must evaluate in determining whether consent was given freely and voluntarily. *Schneckloth*, 412 U.S. at 226. Relevant factors include the age, education, and intelligence of the one giving consent, evidence of duress or coercive activity, and the presence or absence of warnings concerning constitutional rights. *Id.* Voluntariness should be determined from the totality of the surrounding circumstances. *Id*.

The evidence shows that Twitty signed the Waiver freely and voluntarily giving consent to the police to search and seize evidence from Twitty City. The language of the Waiver clearly and unequivocally sets forth Twitty's rights and its purpose. In addition, Sergeant Cannon explained the form and Twitty's rights to him. Twitty owns a car dealership and presumably has the education and intelligence to run a business. There was no proof that Twitty lacked the education and intelligence to understand the consent form. Rather, the testimony of Walker indicates that Twitty fully understood his rights.

Counsel for Twitty, however, argues that Twitty's consent was not an act of free will because Twitty had "no choice" but to execute the Waiver. In support of his position that he was not free to resist any request from the police, Twitty relies on the

7

fact that he initially resisted police requests for him to remove the bulge from his pocket but eventually capitulated. This argument is unpersuasive. Rather, this evidence shows that Twitty knew he could decline requests from the police, and no evidence was presented that Twitty ever declined or resisted signing the Waiver. Other than the testimony about the production of the drugs in Twitty's pockets, there was no proof whatsoever of any duress or coercive activity. Thus, considering the totality of the circumstances and the undisputed evidence, Twitty freely and voluntarily signed the Waiver. Accordingly, the court submits that the search of Twitty City and the seizure of all evidence from Twitty City was valid under the Fourth Amendment.

Twitty also argues that the fact that he was detained makes his consent to the Waiver involuntary. The mere fact of detention, however, is insufficient to invalidate Twitty's consent. *U.S. v. Henderson*, 488 F.Supp. 2d 648, 653 (N.D. Ohio 2007) ("If the police obtain a defendant's consent without coercion arising 'either from the nature of the police questioning or the environment in which it took place,' then a court will find the consent voluntary") (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). As previously stated, the court submits that the totality of the circumstances establishes that Twitty's consent was given freely and voluntarily.

In addition, Twitty argues his consent was involuntary because it closely followed in time an unlawful entry to and search of the premises.[1] This assertion is not supported by the evidence.

---

[1] Twitty does not specifically assert that the police detention of his person violated the Fourth Amendment. To the extent his arguments can be interpreted as challenging the legality of his detention, however, the court submits that his detention was valid. For a detention to meet the requirements of the Fourth Amendment, the police need only have "reasonable suspicion of criminal activity" to seize a person for a brief investigatory detention. *United States v. Lopez-Medina*, 461 F.3d 724, 739 (2006)(citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). If the seizure amounts to a formal or informal arrest, however, that seizure must be based on probable cause arising out of knowledge of facts that would cause a reasonable person to believe the individual has committed a crime, is committing a crime, or is about to commit a crime. *Id*. (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). A court should consider factors such as transportation of the detainee to another location, physical confinement of the detainee, coercion, whether the individual was read *Miranda* rights, and the use of weapons or physical force, in determining whether a seizure amounts to an arrest or a brief investigatory detention. *Id*. (citing *Lopez-Arias*, 344 F.3d at 627).

The undisputed evidence presented at the hearing establishes that Deputy Walker's initial seizure of Twitty's person amounted to a brief detention for the purposes of allowing Deputy Walker and Sergeant Canon to gather evidence relating to the home invasion which occurred in the early hours of December 15, 2005. The identification of Twitty as a suspect in that robbery and Deputy Walker's observance of the green Lumina in the parking lot created a reasonable suspicion of criminal activity to justify an investigatory detention.

Moreover, even if one assumes that Deputy Walker's initial investigatory detention progressed to an informal arrest, an arrest was also supported by probable cause. Soon after Deputy Walker entered Twitty City, he viewed the first firearm within Twitty's reach. Immediately upon viewing this firearm, Deputy Walker inquired whether there were any other firearms. In response, Twitty admitted that another firearm was present at Twitty City and that he was a convicted felon. The court submits that these facts provide probable cause sufficient to justify an informal arrest of Twitty as being a felon in possession of firearms. Thus, Twitty's argument that his consent followed a

The undisputed evidence shows that Twitty City was not searched and neither of the firearms at issue were seized until <u>after</u> Twitty had signed the Waiver. To the extent, however, that Twitty's motion can be construed to dispute the validity of Walker's act of temporarily moving the first firearm out of Twitty's immediate reach and into the second office with Twitty's consent, the court submits that this act does not amount to a seizure. A seizure occurs when there is a meaningful interference with a possessory interest. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Deputy Walker's actions in removing the first firearm from the front office to another office did not constitute a "meaningful interference" with any possessory interest Twitty may have had in the first firearm so as to constitute a seizure.

Even if Deputy Walker's act did amount to a seizure, however, it was lawful. The Sixth Circuit has held that, even where a gun is legally possessed, "because of its inherently dangerous nature, police may seize it if there are articulable facts demonstrating that it poses a danger." *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 472 (1971)). *See also United States v. Bishop*, 338 F. 3d 623, 626 (6th Cir. 2003). In *Bishop*, the Sixth Circuit specifically stated that where police officers need to "protect themselves and the public from violence in circumstances where it would not be

---

prior illegality is unpersuasive.

practical to require the officer to secure a warrant and where probable cause may be lacking," the requirements of the Fourth Amendment do not apply. *Bishop*, 338 F. 3d at 626. In articulating this exception, the *Bishop* court quoted the holding of *Maryland v. Buie*, 494 U.S. 325, 334 (1990) that:

> incident to an in-home arrest, a police officer may look beyond 'closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched' if 'there [are] articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing the area to be swept harbors an individual posing a danger to those on the arrest scene.'

*Id*. Under this reasoning, Deputy Walker's act of removing the first firearm to the other office would fall under an exception to the Fourth Amendment.

Moreover, the undisputed evidence indicates that Twitty assented to Deputy Walker's entry into his business. When Deputy Walker approached Twitty in the parking lot of Twitty City and requested entry into Twitty City, Twitty did not refuse but turned and walked inside Twitty City. The Sixth Circuit has held that similar actions amount to voluntary consent to enter and a waiver of Fourth Amendment rights. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (holding that the defendant's act of moving away from the door and back in response to an officer's request for entry was sufficient to amount to consent that waived the defendant's rights under the Fourth Amendment). In so holding, the *Carter* court quoted the holding of *Robbins v. MacKenzie*, 364 F.2d

11

45, 49 (1st Cir. 1996) that "[a]n ordinary person who knocks on a door and receives assent may properly consider himself and invited guest . . . . Similarly, the fourth amendment . . . does not require [a police officer] to be clairvoyant." *Carter*, 378 F.3d at 587. Applying the reasoning of *Carter*, the court submits that Twitty had waived his Fourth Amendment rights prior to any search of Twitty City and seizure of any evidence at Twitty City.

B.  Exigent Circumstances

Because the court has determined that Twitty validly consented to a search and seizures, the court finds it is unnecessary to determine this issue.

C.  Standing to Contest Search

The government argues in its response to the motion to suppress that Twitty lacks standing to contest the search and seizures under the Fourth Amendment on the basis that he did not have a reasonable expectation of privacy in the areas searched. Because the court has determined that Twitty validly consented to a search and seizures, the court finds it is unnecessary to determine this issue.

III.  CONCLUSION

For the reasons stated above, it is recommended that Twitty's motion to suppress be denied.

Respectfully submitted this 2nd day of April, 2009.

    s/ Diane K. Vescovo
    DIANE K. VESCOVO
    UNITED STATES MAGISTRATE Judge